IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.H., : | | |
| a minor, by and through his mother, L.H., : | | |
| Plaintiffs, : | | CIVIL ACTION |
| : | | |
| v. : | | |
| : | | |
| ROSE TREE MEDIA : | | |
| SCHOOL DISTRICT, : | | No. 17-4766 |
| Defendant. : | | |

**MEMORANDUM**

**Schiller, J.**  September 17, 2018

J.H. is a high school student with disabilities who is eligible for special education services. J.H., by and through his parent L.H., sued the Rose Tree Media School District ("the District") under the Individuals with Disabilities Education Act ("IDEA") and Pennsylvania law.

After J.H. assaulted another student, the District determined that J.H.'s conduct was not a manifestation of his disabilities and expelled him. Plaintiffs challenged the legal sufficiency and finding of the District's Manifestation Determination Review ("MDR") by requesting a special education due process hearing. The hearing officer determined that the District afforded J.H. a proper MDR and correctly concluded that J.H.'s conduct was not a manifestation of his disability. Plaintiffs have challenged this determination; both parties have moved for judgment on the administrative record. For the reasons set forth below, the Court denies Plaintiffs' motion and grants Defendant's motion.

## I. BACKGROUND

At the time of the incident, J.H. was fifteen years old and attending Penncrest High School in the Rose Tree Media School District. (Tr. of July 18, 2017 Expedited Due Process Hearing ["Tr."] 342:19–20, 447:14–15.) J.H. has been diagnosed with Attention Deficit

Hyperactivity Disorder Inattentive Type and a Specific Learning Disability in Written Expression. (Hearing Officer's Decision, July 28, 2017 ["HOD"] at 19.)

On March 1, 2017, J.H. assaulted another student. (*Id.* at 4.) A different student agreed to film J.H. assault the victim and share the video online. (*Id.*) When J.H. approached the victim during lunch to talk, the victim offered J.H. a box of raisins. (*Id.* at 3.) Without provocation, J.H. abruptly grabbed the victim's head and smashed it into his lunch on the cafeteria tabletop. (*Id.*) The victim became upset and struck J.H.'s chest. (*Id.*) J.H., "still standing over the [victim], then wound up like a softball pitcher and delivered a fist punch to the left eye socket on the [victim's] face." (*Id.*) As a result, the victim suffered a broken nose and eye socket, a collapsed nasal cavity, an air pocket behind the left ear, and a concussion. (*Id.* at 4.)

On March 7, 2017, the District held an MDR. (*Id.* at 5.) The psychologist, the secondary supervisor of special education, the assistant principal, the counselor, the regular education teacher, the special education teacher, L.H., J.H.'s grandfather, and J.H. attended the MDR. (*Id.*; Manifestation Determination Worksheet at 8.) "To ensure the manifestation determination team had up to date data[,] the psychologist spent three to four hours reading and reviewing records." (HOD at 16.) The team reviewed the relevant records and collected input from the teaching staff, the psychologist, the mental health counselor, and L.H. (*Id.* at 5.)

Also on March 7, 2017, the superintendent sent notice of a pre-expulsion hearing to L.H. (*Id.* at 5.) The District held the expulsion hearing on May 25, 2017, and the School Board voted to permanently expel J.H. (*Id.*)

L.H. requested an expedited due process hearing, pursuant to IDEA regulations, appealing the District's decision that the incident was not a manifestation of J.H.'s disabilities. (*Id.* at 2.) The ten-hour hearing occurred on July 17, 2017. (*Id.*) After considering the videotaped

evidence, the existing evaluation, the individualized education program, the disciplinary record, the reports of the family stressors, and J.H.'s unique needs and circumstances, the hearing officer concluded that the District's manifestation determination was correct. (*Id.* at 19–20.) Plaintiffs subsequently sued, alleging that the District, in violation of the IDEA and Pennsylvania law, failed to conduct an adequate MDR. Both parties filed motions for judgment based on the administrative record.

## II.   STANDARD OF REVIEW

The IDEA guarantees procedural safeguards for children with disabilities and their parents with respect to the provision of a free appropriate public education. 20 U.S.C. § 1415. When a child with a disability violates a code of student conduct, school personnel "may remove [the child] . . . from their current placement to an appropriate interim alternative educational setting, another setting, or suspension, for not more than 10 days." § 1415(k)(1)(B). "If school personnel seek to order a change in placement that would exceed 10 school days and the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability . . . the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner and for the same duration in which the procedures would be applied to children without disabilities." § 1415(k)(1)(C). Parents who disagree with the manifestation determination may request a hearing. § 1415(k)(3)(A).

Under the IDEA, a district court reviewing state administrative proceedings must conduct a modified *de novo* review. *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). A district court's review of a hearing officer's legal conclusions is plenary. *K.C. ex rel. Her Parents v. Nazareth Area Sch. Dist.*, 806 F. Supp. 2d 806, 814 (E.D. Pa. 2011). A district court must, however, "give due weight to the factual findings of [a hearing officer] in

IDEA cases." *S.H.*, 336 F.3d at 269. "Factual findings from the administrative proceedings are to be considered prima facie correct." *Id.* at 270. A reviewing court must explain the basis for rejecting any administrative findings of fact and avoid "substitut[ing] its own notions of sound educational policy for those of local school authorities." *Id.*

Moreover, credibility determinations by state agencies after hearing live testimony are afforded "special weight," meaning that credibility determinations must be accepted "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). This is "essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." *Id.*

## III. DISCUSSION

Plaintiffs request that the Court reverse the hearing officer's decision. (Pls.' Mot. for J. on Admin. R. ["Pls.' Mot."].) Plaintiffs argue that the district deleted additional video footage and that some team members did not review the preserved videos. (Pls.' Mot. at 11–12.) Additionally, Plaintiffs argue that the hearing officer erroneously concluded J.H.'s actions were not a manifestation of his disability because the hearing officer did not consider how the disability specifically manifests in J.H. (*Id.* at 12–14.) Defendant argues that the hearing officer correctly determined that J.H.'s conduct was not a manifestation of his disability. (Def.'s Mot. for J. on Admin. R. ["Def.'s Mot."].)

### A. The District Conducted a Legally Sufficient MDR.

The hearing officer correctly determined that the District's MDR was legally sufficient. MDR attendees "shall review all relevant information in the student's file." § 1415(k)(1)(E). But each member of the review team need not review the entire file. *See Fitzgerald v. Fairfax Cty.*

*Sch. Bd.*, 556 F. Supp. 2d 543, 559 (E.D. Va. 2008) ("All the statute requires is that, before reaching a manifestation determination, the team must review the information pertinent to that decision."). Here, at least two members of the MDR team reviewed video footage capturing the incident. (Pls.' Mot. at 12; Tr. 244:13–25.) The hearing officer also reviewed and relied on the video footage. (HOD at 19.) Besides, Plaintiffs did not offer a reason for believing the MDR outcome may have changed if every team member reviewed the video footage before the meeting. For example, the school psychologist, who did not review the video until the due process hearing, testified that he would not have changed his conclusion. (Tr. 337:25–338:17.)

Moreover, Plaintiffs' argument concerning the deleted additional video footage is unpersuasive. Plaintiff does not cite any authority holding that school districts are obligated to preserve multiple videos of student misconduct. Rather, the crux of Plaintiffs' argument is that videos from different angles would provide "different perspectives of the incident." (Pls.' Mot. at 11.) But the record already "includes two different videos of the attack." (HOD at 3 n.3.) Because the record includes two videos that captured the assault, additional video is unnecessary. *See D.C. v. Mount Olive Twp. Bd. of Educ.*, Civ. A. No. 12-5592, 2014 WL 1293534, at *27 (D.N.J. Mar. 31, 2014) ("[Plaintiffs] do not point to any cases holding that failing to consider one of the categories of information 'included' in the IDEA's requirements equates to a procedural violation of the statute, and even if it were, they do not explain how the inclusion of [other relevant information] would have changed the outcome of the proceeding.").

### B. J.H.'s Conduct Was Not a Manifestation of His Disability.

The manifestation team and the hearing officer gave specific consideration to how the disability manifests in J.H. when they correctly concluded that his conduct was not a manifestation of his disability. Conduct is a manifestation of the student's disability if the

conduct in question was (1) caused by, or had a direct and substantial relationship to, the child's disability; or (2) the direct result of the local educational agency's failure to implement the individualized education program. § 1415(k)(1)(E)(i)(I)–(II). To determine whether the violating conduct is a manifestation of the student's disability, the local educational agency, the parent, and the relevant members of the individualized education program team meet to review the relevant information within 10 school days of any change-of-placement decision. § 1415(k)(1)(E)(i). MDR teams must do more than consider a student's disability "in light of what is typical for students with [the disability]." *Bristol Twp. Sch. Dist. v. Z.B.*, Civ. A. No. 15-4604, 2016 WL 161600, at *9 (E.D. Pa. Jan. 14, 2016). In other words, MDR teams must "consider the specific circumstances of the incident and the alleged conduct." *Id.* at *11.

Here, the parties agree that J.H.'s disabilities are Attention Hyperactivity Disorder Inattentive Type and a Specific Learning Disability in Written Expression. (HOD at 15.) The MDR team and the hearing officer considered J.H.'s disability-related manifestations such as impulsiveness and low frustration tolerance; "stressors" that Plaintiffs asserted are interconnected with J.H.'s disabilities such as family dynamics and living arrangements; and other factors such as cyberbullying. (HOD 13–16.) None of the evidence connects J.H's disability, or the manifestation of J.H.'s disability, to violence; at most, the evidence suggests that J.H. exhibits verbal aggression due to his disability-related frustration. (Tr. 269:9–270:1, 390:12–25.)

It is unapparent to the Court how J.H.'s disability, or its impulsive effects and associated stressors, caused or directly and substantially related to a planned assault on another student. *See Danny K. v. Dep't of Educ.*, Civ. A. No. 11-00025, 2011 WL 4527387, at *15 (D. Haw. Sept. 27, 2011) (noting that planned activities are less likely manifestations of a student's ADHD because

the disability affects organization or attentiveness). This is especially true given that the victim did not bully J.H. (Tr. 323:22–324:2.) Moreover, Plaintiffs suggest that J.H. did not plan the entire incident. The Court rejects Plaintiffs effort to separate J.H.'s smashing victim's face into the tabletop and J.H.'s punching victim in the face. (Pls.' Mot. at 11–12, 13.) Doing so would contradict, without any basis, the hearing officer's factual findings that J.H. planned the assault for hours, if not days. (HOD at 4, 13.)

## III. CONCLUSION

For the reasons discussed above, Plaintiffs' motion for judgment on the administrative record is denied and Defendant's motion for judgment on the administrative record is granted. An appropriate Order will be docketed separately.